**E-FILED**
Tuesday, 05 February, 2008  01:36:39 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| RIVIERA DISTRIBUTORS, INC.,<br>an Illinois corporation, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | No.  07-1239 |
| | ) | |
| HIGH-TOP AMUSEMENTS, INC.,<br>a Michigan Corporation, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| _____ | ) | |
| | ) | |
| HIGH-TOP AMUSEMENTS, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARTY LUSTIG, individually and dba | ) | |
| PRESTIGE INDUSTRIES, LTD., and, | ) | |
| NORMAN BARMAN, individually and dba | ) | |
| UNIVERSAL VENDING, UNIVERSAL | ) | |
| VIDEO, AND UNIVERSAL VENDING, | ) | |
| LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on the following motions to dismiss and/or strike:

1)   Plaintiff's motion to dismiss High-Top Amusements, Inc.'s Counter-Complaint as to Counts I and II, and to strike the relief requested in Count III (d/e 17);

2)   Motion to dismiss High-Top's Third Party Complaint by Third Party Defendants Barman and Universal (d/e 26); and,

3)   Motion to dismiss High-Top's Third Party Complaint by Third Party Defendants Lustig and Prestige Industries, Ltd. (d/e 28).

## STANDARD OF REVIEW

To the extent the motions are based on Fed. R. Civ. P. 12(b)(6), federal notice pleading standards govern, even as to the state claims.  Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002)(federal notice pleading applies to state claims in diversity suits).

All the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' . . . ." Id., *quoting* Bell Atlantic, 127 S.Ct. at 1965, 1973 n. 14. "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" Killingsworth v. HSBC Bank

Nevada, 507 F.3d 614, 618 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v.
Twombly, 127 S.Ct. at 1974.

## BACKGROUND AND ALLEGATIONS

Plaintiff Riviera Distributors, Inc. ("Riviera") owns copyrights on the
software and audiovisual components of a video poker game.  (Complaint ¶¶ 10-
14).  These copyrighted works were originally developed by a company named
Merit Industries, Inc..  Riviera purchased the copyrights at issue from Merit in
March 2004, along with other video poker games.  (Complaint ¶¶ 11, 13).

Riviera alleges that Martin Lustig, d/b/a Prestige Industries, Ltd.
(collectively, "Prestige"), directly infringed on Riviera's copyrights by creating a
virtually identically copy of the game from Riviera's board and selling it under a
different name, "Superstar."  (Complaint ¶ 31-35).  Prestige then allegedly
created derivative works from this infringing game and "profit[ed] commercially by
placing them in the stream of commerce."  (Complaint ¶ 34).  Defendant High-
Top Amusements, Inc. ("High-Top"), purchased some of Prestige's infringing
boards for placement and operation in Michigan.  High-Top alleges that Prestige
falsely represented that it owned the copyrights on the boards.

On February 4, 2007, Riviera and High-Top entered into a Settlement
Agreement regarding High-Top's infringing activities.  High-Top allegedly
breached the Settlement Agreement by failing to return all used circuit boards,
failing to perform required accountings, and misrepresenting the number of

infringing games and boards it was operating.  (Complaint ¶¶ 28-30).  On August

16, 2007, Riviera sent High-Top a Notice of Default outlining High-Top's

breaches and Riviera's legal positions.  (Complaint ¶¶ 41, 42).  Riviera asserted

that its release under the Settlement Agreement was null and void in light of

these breaches.  (Complaint ¶ 42).

High-Top allegedly did not comply with Riviera's demands in the Notice of

Default.  Riviera estimates that High-Top is now operating more than 400

infringing games throughout Michigan.  (Complaint ¶¶ 21, 22, 36-37).

Riviera filed its Complaint in this case in September 2007.  The Complaint

alleges the following claims:

> Count I: Copyright Infringement, 17 U.S.C. § 501 *et seq*
>
> Count II: False Designation, 15 U.S.C. § 1125
>
> Count III: Trade Dress Infringement, 15 U.S.C. § 1125
>
> Count IV: Uniform Deceptive Trade Practices Act, 815, ILCS § 510 *et seq*
>
> Count V: Breach of Settlement Agreement

High-Top responded with a Counter-Complaint against Riviera, asserting

that High-Top has substantially performed all the terms of the Agreement and

while Riviera has not.  (Counter-Complaint, d/e 10, ¶ 8).  Count I of High-Top's

Counter-Complaint asks for a declaratory judgment regarding the rights and

obligations of the parties under the Settlement Agreement.  Count II is an

alternative count seeking a declaration that Riviera's copyrights are "void, invalid and unenforceable."  (Counter-Complaint ¶ 12).  Count III is a breach of contract action based on the Settlement Agreement.

High-Top also filed a Third Party Complaint against two groups of third party defendants responsible for selling High-Top the alleged infringing boards: Third Parties Martin Lustig, dba Prestige Industries, Ltd (collectively, "Prestige"); and, Third Parties Norman Barman, d/b/a Universal Vending, Universal Video and Universal Vending LLC (collectively, "Universal").  (Third Party Complaint, d/e 10).  High Top alleges that, in 2003 and 2004, it bought about 100 alleged infringing "chips" from Prestige and has since turned over about 50 of them to Riviera.  In making these purchases, High-Top alleges it relied on Prestige's intentionally false representations that Prestige was the original developer of the chips, that Prestige owned the copyrights and that Prestige had the right to create, distribute and sell the chips.  (Third Party Complaint ¶ 14).  The remainder of the video games operated by High-Top use a chip purchased by High-Top from Universal, relying on identical representations.  Since Riviera alleges that "all" of High-Top's video poker games are infringing, High-Top interprets that to include the games containing the Universal chip, though Universal is not mentioned in Riviera's Complaint.  (Third Party Complaint ¶¶ 27-28).  High Top pursues actions against the third parties for breach of contract, fraud and indemnity.

## ANALYSIS

I.   **Plaintiff Riviera's Motion to Dismiss and Strike Portions of High-Top's Counter-Complaint**

   A.  **Count I of Counter-Complaint**
       **(seeking declaratory judgment on Settlement Agreement)**

In Count I of its Counter-Complaint, High-top seeks a declaratory judgment:

(1) declaring the rights of [High-Top] and Riviera under the Settlement

Agreement; (2) declaring that the Settlement Agreement is valid and enforceable;

(3) declaring that High-Top has substantially complied with and has not breached

the Agreement; and, (4) declaring that Riviera has breached the Agreement.

(Counter-Complaint, p. 3).

Riviera moves to dismiss this count,[1] arguing that declaratory relief is

improper because the existing substantive claims already address and will

require resolution of the same issues.

28 U.S.C. § 2201(a) provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of
> the United States, upon the filing of an appropriate pleading, may
> declare the rights . . . of any interested party seeking such
> declaration, whether or not further relief is or could be sought.  Any
> such declaration shall have the force and effect of a final judgment or
> decree and shall be reviewable as such.

---

[1]Riviera moves to dismiss under "rule 12" for failure to state a claim for declaratory relief.  It may be more correct to characterize Riviera's request as one to decline to exercise jurisdiction.  *See* Amari v. Radio Spirits, Inc., 219 F.Supp.2d 942, 945 (N.D. 2002)(declining to exercise jurisdiction over declaratory judgment claim); Institute for Studies Abroad, Inc. v. International Studies Abroad, Inc., 263 F.Supp.2d 1154, 1157 n. 4 (S.D. Ind. 2001).

The general purpose of declaratory relief is to determine the parties' rights and obligations as to anticipated future events, in order to avoid future liability. "Its purpose 'is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued."'" Nucor Corp. v. Aceros y Maquilas de Occidente, 28 F.3d 573, 577 (7th Cir. 1994)(quoted cites omitted). Declaratory relief is available when: "(1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision." Tempco Elec. Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749 (7th Cir. 1987).  A party cannot seek declaratory relief "simply as a predicate for a subsequent damages claim." Bontkowski v. Smith, 305 F.3d 757, 761 (7th Cir. 2002)(citations omitted). Similarly, declaratory relief is not available when a lawsuit is already pending and requires resolution of the same issues. See Tempco, 819 F.2d at 749 (separate declaratory judgment action served no useful purpose after trademark infringement claim was filed);  Amari v. Radio Spirits, Inc., 219 F.Supp.2d 942, 944 (N.D. Ill. 2002)(declaratory judgment served no useful purpose where the same issues would be resolved in substantive action).

The Court agrees with Riviera that the declaratory relief sought in Count I of High-Top's counterclaim is improper.  A "declaration" that High-Top did not breach the Settlement Agreement and Riviera did is effectively a determination of the merits of the parties' respective breach of contract claims.  High-Top argues that a declaratory judgment should issue with regard to whether paragraph eight of the Settlement Agreement (the release) bars Riviera's copyright claims, because the copyright claims hinge on whether the release is enforceable.  That is an argument that goes to the merits of High-Top's defense to Riviera's substantive breach of contract claim.  A "declaratory judgment" that paragraph eight of the Settlement Agreement bars Riviera from pursuing its copyright claims would require the court to rule on the merits of Riviera's assertion that paragraph 12 of the Agreement voids paragraph eight's release because High-top failed to disclose or misrepresented information.  All of these determinations are part of the "ripened" substantive claims already proceeding in this case, not a "controversy [that] has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so." Tempco, 819 F.2d at 749.

Thus, the Court will recommend that Count I of High-Top's Counter-Complaint ("Declaratory Judgment-Settlement Agreement) be dismissed, as the relief sought is not appropriate for declaratory judgment.  That same relief may

be and is already sought in High-Top's other counterclaims and affirmative

defenses on the substantive claims.[2]

**B.  Count II of Counter-Complaint (Declaration of Invalidity/Unenforceability of Copyrights)**

Count II of the Counter-Complaint is pled in the alternative: " . . . in the

event that the Court finds that the Settlement Agreement is invalid and

unenforceable, then as an alternative claim, [High-Top] . . . asserts that the

copyrights at issue . . . are void, invalid and unenforceable."  (Counter-Complaint

¶ 12).

Riviera moves to dismiss this count on the grounds that it already stipulates

to the validity of the Settlement Agreement, rendering the alternative count

unnecessary.  High-Top makes clear in its response, however, that Count II

comes into play if the Court determines that *release* in ¶ 8 of the Agreement is

unenforceable, rather than the entire Settlement Agreement.  (High-Top's

Memorandum, d/e 23, p. 8 n.2)(offering to reword Count II to ". . . in the event

that the Court finds that the Release . . . is invalid and unenforceable, then,

[High-Top] asserts that the copyrights at issue . . . are void . . . .").  Thus, the

Court will recommend that Riviera's motion to strike Count II be denied.

_____

[2]High-Top also argues that it properly seeks declaratory relief in Count II (declaration of invalidity of copyrights).  Riviera does not argue that the relief sought in Count II is improper, so the Court does not address the issue.

**C.     Relief Sought in Count III of Counter Complaint (Breach of Contract-Settlement Agreement)**

High-Top alleges in Count III of the Counter Complaint that Riviera breached the Settlement Agreement by failing to deliver certain game boards, by delivering game boards "not fit for their intended purposes" and by pursuing this action.  (Counter-Complaint ¶ 52).  High-Top asks for judgment in its favor on Count III and all "actual, consequential, exemplary, and punitive damages, costs and attorneys fees, and all equitable relief . . ."  (Counter-Complaint p. 12).[3]

Riviera moves to strike the request for attorneys' fees and punitive damages, arguing that such damages are not available under Illinois law in breach of contract actions.

High-Top implies that the relief sought in Count III may not be governed by Illinois law.  (d/e 23, pp. 9-10).  The Settlement Agreement, however, specifies that it is governed by Illinois law, and Count III is a claim based on breach of that Agreement.  (Settlement Agreement ¶ 16, attached as Exhibit A to Counter-Complaint).  High-Top does not explain what law does govern the remedies available in Count III if it is not Illinois.

Illinois common law follows the "American Rule":  attorney's fees and costs are generally not recoverable by prevailing parties, unless provided for by statute

---

[3]High-Top contends that the prayer for relief is general as to all counts, but it does not appear to be by its own terms.  Count II also seeks attorney's fees.

or contract.  <u>Installco Inc. v. Whiting Corp.</u>, 336 Ill.App.3d 776, 786 (4th Dist. 2002)(citation omitted).  High-Top does not assert it is entitled to attorney's fees on Count III under the Settlement Agreement.[4]  High-Top does contend that it can recover attorneys fees as consequential damages under the U.C.C., but the cases cited do not deal with attorney's fees incurred in pursuing a breach of contract action.  The cases cited by High-Top deal with attorney's fees incurred in pursuing or defending third party actions necessitated by the breach.  *See, e.g.,*  <u>Leighton v. Callier Steel Pipe & Tube, Inc.</u>, 1991 WL 18413 (N.D. Ill. 1991)(not reported in F.Supp.)(recovery sought by middleman against original seller of defective steel pipe for attorney's fees incurred in defending lawsuit by ultimate purchaser of pipe); <u>Colton v. Decker</u>, 540 N.W.2d 172 (S.D. 1995)(attorney's fees for prosecuting breach of warranty not recoverable, but attorney's fees incurred in clearing clouded title were); <u>Osburn v. Bendix Home Systems, Inc.</u>, 613 P.2d 445 n. 23 (Okla. 1980)(stating that recovery of attorney's fees was not based on Code, but on state statute).  As those cases show, attorneys fees may be recoverable as consequential damages when they arise from defending or pursuing third party litigation, but not when they are incurred in pursuit of the original breach of contract claim.  *See* <u>Fidelity and Deposit Co. of Maryland v. Krebs Engineers</u>, 859 F.2d 501, 506 (7th Cir. 1988)(American Rule

---

[4]The Court reviewed the Settlement Agreement and found no provisions regarding attorney's fees.

precluded recovery of attorney's fees for prosecuting claim, but fees incurred in third party action were recoverable)(applying Wisconsin law); Clark, Barkley, and Smith, Christopher, 1 The Law of Product Warranties § 7.44 (Westlaw, updated Nov. 2007)("courts do allow attorney fees incurred by the aggrieved buyer in defending third-party claims generated by the breach of warrant.").  Accordingly, the Court will recommend the request for attorney's fees in Count III be stricken.[5]

As for punitive damages, Illinois common law holds that punitive damages are not recoverable on breach of contract claims, even for willful and wanton breaches.  Morrow v. L.A. Goldschmidt Associates, Inc., 112 Ill.2d 87, 98-99 (1986).  Punitive damages are recoverable, however, "when the conduct causing the breach is also a tort for which punitive damages are recoverable."  Id. at 95. The conduct must give rise to a tort independent of the breach of contract.  Id.; Hardin, Rodriguez & Boivin Anesthesiologistis, Ltd. v. Paradigm Ins. Co., 962 F.2d 628, 638-639 (7th Cir. 1992)("While it is true that punitive damages are generally unavailable in contract cases in Illinois, . . . there is an exception when the defendant is also found to have committed an independent tort, separate from the breach of contract."); Sharpe v. Jefferson Distributing Co., 1998 WL 786397 (N.D.Ill. 1998)(not reported in F.Supp.2d)(punitive damages on breach of

---

[5]High Top's claim for attorney's fees in Count II of the Counter-Complaint remains, as well as High Top's claims for consequential damages in its Third Party Complaint.

employment contract not dismissed where plaintiff alleged that her rebuff of unwanted sexual advances caused the breach).

In the Court's opinion, Count III does not give fair notice of the grounds upon which Plaintiff's claims for punitive damages rests.  It alleges only breach of the terms of the Settlement Agreement.  No reasonable inference arises of an independent tort that might support punitive damages.  High-Top contends in its response that it "will demonstrate that Riviera never intended on fulfilling its obligations under the Agreement and furthermore, that it routinely enters into settlement agreements with parties with the intent of declaring a breach and thereafter alleging infringement."  (d/e 23, p. 12).  Yet even willful and wanton breaches will not support recovery of punitive damages on a breach of contract claim.  Morrow, 112 Ill.2d at 98.

Accordingly, the Court will recommend that the request for attorneys fees and punitive damages be stricken from Count III.  However, the Court will also recommend that Plaintiff Riviera be given leave to file an amended complaint, as requested, to the extent Riviera believes a viable claim for punitive damages can be asserted.

## II.  Third Party Defendant Universal's Motion to Dismiss

High-Top sues Universal for misrepresentation, fraud and indemnity, alleging that, like Prestige, Universal sold High-Top chips that infringed on Riviera's copyrights.

Universal argues that High-Top fails to state a claim because Universal was not a party to the Settlement Agreement and the "basis for Riviera's claim against High-Top is High-Top's failure to perform its obligations under the settlement agreement." (d/e 26, p. 2). Universal asserts it cannot be held liable under Fed. R. Civ. P. 14(a).

The current version of Fed. R. Civ. P. 14 provides in pertinent part:[6]

(a)(1) . . . A defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. . . .

*          *          *

(a)(3) . . . The plaintiff may assert against the third party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. . .

Universal argues that this case is about breach of the Settlement Agreement and it cannot be liable for breach of an agreement to which it is not a party. However, this case is also about copyright and trademark infringement (Counts I-III of Riviera's Complaint) and deceptive practices (Count IV of Riviera's Complaint). Universal does not argue that it cannot be liable to High-Top in some fashion (such as contribution or indemnity) if High-top is found liable on those claims. *See, e.g.,* Monotype Imaging, Inc. v. Bitstream, Inc., 376 F.Supp.2d 877, 883 (N.D.Ill.2005)("In order to state a claim for contributory

_____

[6]Effective December 1, 2007.

copyright infringement, the plaintiff must allege that the defendant: (1) had

knowledge of the direct infringer's conduct; and (2) materially contributed to the

infringing conduct); In re Aimster Copyright Litigation, 252 F.Supp.2d 634, 654

(N.D.Ill.2002)(contributory copyright infringement occurs when the defendant

"with knowledge of the infringing activity, induces, causes, or materially

contributes to the infringing conduct of another"); Too, Inc. v. Kohl's Dep't Stores,

Inc., 213 F.R.D. 138, 140-142 (S.D.N.Y. 2003)(allowing third party complaint for

contributory copyright  infringement).[7]  Accordingly, the Court will recommend

denial of Universal's motion to dismiss.

## III.  Third Party Defendant Prestige's Motion to Dismiss

Prestige moves to dismiss in part for the same reason as Universal--that

Prestige cannot be liable for High-Top's breaches of the Settlement Agreement.

As discussed above, the Settlement Agreement breach claim is only Count V of

the Complaint, not Riviera's entire case.  Like Universal, Prestige does not

address whether it may be liable to High-Top if High-Top is liable on Counts I-IV

of the Complaint.  (d/e 28, p.2).

Prestige also moves to dismiss based on lack of personal jurisdiction.  Fed.

R. Civ. P. 12(b)(2).[8]  High-Top bears the burden of proving a *prima facie* basis for

---

[7]The Court makes no recommendation on whether High-Top has viable claims for contribution or indemnity.

[8]The Court refers to Prestige and Lustig collectively as "Prestige" for convenience.

personal jurisdiction.  RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th

Cir.1997).  If the court does not have personal jurisdiction over Prestige, it does

not have the power to decide the claims against Prestige, even if ancillary

jurisdiction under Fed. R. Civ. P. 14 is appropriate.  *See* Wright, Charles A.,

Miller, Arthur R. and Kane, Mary K., 6 Fed. Prac. and Proc. Civ. 2d § 1445, 6

FPP § 1445 (Westlaw cite, current through 2007 update).

> "If personal jurisdiction is challenged under Rule 12(b)(2), the court
> must decide whether any material facts are in dispute.  If so, it must
> hold an evidentiary hearing to resolve them, at which point the party
> asserting personal jurisdiction must prove what it alleged.  Until such
> a hearing takes place, the party asserting personal jurisdiction need
> only make out a *prima facie* case of personal jurisdiction.

Hyatt International Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).  If the

decision is made solely on written submissions, material factual disputes are

resolved in favor the plaintiff.  RAR, Inc., 107 F.3d at 1275 (7th Cir. 1997).

Prestige argues that personal jurisdiction is not permitted under the Illinois'

long-arm statute or due process.  The Illinois long-arm statute sets forth several

specific acts that convey personal jurisdiction, but it also has a "catch-all"

provision that personal jurisdiction may be exercised "on any other basis now or

hereafter permitted by the Illinois Constitution and the Constitution of the United

States."  735 ILCS 5/2-209(c).  Thus, the controlling question is whether

exercising personal jurisdiction comports with federal and state due process

concerns.  Hyatt, 302 F.3d at 714 ("the Illinois long-arm statute now "'permits its

courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions.'") (quoted cite omitted); <u>Bolger v. Nautica International,</u> Inc., 369 Ill.App.3d 947, 950 (2d Dist. 2007).  The applicable federal and state due process standards do not differ materially for purposes of the Court's analysis. *See* <u>Hyatt</u>, 302 F.3d at 715 ("This court has previously suggested, . . . that there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations . . .")(*citing* <u>RAR, Inc. v. Turner Diesel, Ltd.</u>, 107 F.3d 1272, 1276 (7th Cir.1997); <u>Bolger</u>, 369 Ill.App.3d at 949 n. 1 ("'in almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns.'").[9]

Exercising personal jurisdiction may not  "offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)(*quoted cite omitted*).  Federal due process requires that Prestige (and Lustig) have had "minimum contacts" with Illinois, purposeful contacts, not incidental.  "Crucial to the minimum contacts analysis is a showing that the defendant 'should reasonably anticipate being haled into court [in the forum State],'. . . because the defendant has 'purposefully avail[ed] itself of the privilege

---

[9]In <u>Rollins v. Ellwood</u>, 141 Ill.2d 244 (1990), the Illinois Supreme Court stated that personal jurisdiction may be taken "'only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant' acts which occur in Illinois or which affect interests located in Illinois.'" *Quote taken from* <u>Hyatt</u>, 302 F.3d at 715.  <u>Hyatt</u> noted that "in no case post-*Rollins* has an Illinois court found federal due process to allow . . . jurisdiction . . . where Illinois limits prohibited it . . . ." <u>Id.</u>

of conducting activities there.'"  <u>Hyatt</u>, 302 F.3d at 716 (quoted cites omitted).   In

addition to considering the burden on the defendant, "in an appropriate case"

other factors may also be relevant such as the forum state's interest, efficiency,

and Plaintiff's interest in "convenient and effective relief."   <u>World-Wide</u>

<u>Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980).

Sufficient minimal contacts are present if the "controversies arise out of or

are related to the defendant's forum contacts," otherwise known as "specific

jurisdiction."   <u>Hyatt</u>, 302 F.3d at 713.  If specific jurisdiction is lacking, personal

jurisdiction may still be asserted if "general jurisdiction" exists–where "the

defendant 'has continuous and systematic' contacts with the state in question."

<u>Hyatt</u>, 302 F.3d at 713 (quoted cite omitted).  Isolated and sporadic contacts do

not confer general jurisdiction.  <i>See</i>, <i>e.g.,</i> <u>Helicopteros Nacionales de Columbia</u>

<u>S.A. v. Hall</u>, 466 U.S. 408, 416-18 (1984).

Lustig avers that he is a resident of Michigan and has operated various

businesses under assumed names through a Michigan Corporation, "Mace

Industries, Inc."  (Lustig Aff. ¶ 1-4, attached to d/e 28).  He avers that "Prestige

Industries, LTD was never an active corporation or assumed name . . ." and that

"[t]o the extent any sales/transactions took place between me and High-Top, it

would have been under the assumed names "Games We Play" and/or Prestige

Trading operated by Mace Industries, Inc."  (Lustig Aff. ¶ 4).  Lustig further avers

that neither he nor Mace Industries "and its assumed names" own real estate or

operate an office in Illinois.  He also avers that neither he, "Prestige" nor "Mace Industries (and its assumed names) . . . engage in continuous and systematic business in the State of Illinois."  (Lustig Aff. ¶¶ 11-13).  Lustig also avers that "No activities alleged to have resulted in liability by myself/Mace Industries, Inc. [or Prestige] to High-Top occurred outside the State of Michigan."  (Lustig Aff. ¶¶ 14-15).

High-Top counters that Prestige's liability to High-Top does arise from Prestige's actions in Illinois, specifically, from Prestige's infringement of Riviera's copyright and contributory copyright infringement through its sales to High-Top. High-Top argues that Prestige's infringement constitutes a tortious act causing injury in Illinois which gives this Court personal jurisdiction not only over potential copyright claims against Prestige but also over derivative claims against Prestige.  High-Top argues that Prestige and Lustig "could reasonably foresee that their activities . . . would result in copyright infringement in Illinois . . . .", (d/e 34, p. 6), thus making it reasonable for Prestige to expect to be haled into court in Illinois, both for its original infringement and for its fraudulent inducement of High-Top's infringement.

Prestige does not address whether High-Top's claims against it arose from or are related to its alleged infringing activities.  Prestige does not address the effect of its alleged infringing activities at all, except to mention that it has apparently settled with Riviera.  (d/e 28, p. 10)("as Prestige previously entered

into an Agreement with Riviera which precludes a finding of any liability by

Riviera against Prestige, there <u>cannot</u> exist a derivative cause of action between

High-Top and Prestige . . . .")(emphasis in original).

Even without Prestige's input, however, there are problems with High-Top's

argument.  Assuming that personal jurisdiction would exist over copyright claims

by Riviera against Prestige, Riviera is not pursuing those claims here.  Riviera is

only pursuing copyright claims against High-Top.  The cases cited by High-Top

involve infringement claims by owners of copyrights and trademarks, not ancillary

claims against third parties.[10]  Arguably, High-Top's third party claims do not

arise from or relate to Prestige's infringement, but rather only from Prestige's

misrepresentations, which occurred in Michigan.  On the other hand, Prestige's

original and contributory infringing activities arguably make it more foreseeable

that Prestige would be haled into Illinois court.  Neither party cites, nor has the

Court found in its own non-exhaustive research, a case addressing personal

jurisdiction over third-party defendants in a situation sufficiently analogous to this

case.

---

[10]Infringement alone may not be enough to confer personal jurisdiction, but that question is not before the court.  *See* <u>Janmark, Inc. v. Reidy</u>, 132 F.3d 1200, 1202 (1997)(infringement plus inducing customers to stop purchases from Illinois company); <u>Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd Partnership</u>, 34 F.3d 410, 412 (7th Cir. 1994)(trademark infringement plus "entry" into state with broadcasts); <u>Honeywell, Inc. v. Metz Apparatewerke</u>, 509 F.2d 1137, 1141 (7th Cir. 1975)(infringement plus marketing and promotion of infringing product nationwide through distributor); <u>Caterpillar, Inc. v. Miskin Scraper Works, Inc.</u>, 256 F.Supp.2d 849, 851-52 (C.D. Ill. 2003)(Judge McDade)(must be tortious act plus "entry" into state).

In the court's opinion, part of the difficulty in determining whether personal jurisdiction exists (either specific or general) is an incomplete factual record.  The Court believes that Lustig's affidavit is too conclusory to support a confident conclusion that personal jurisdiction is lacking.  Missing is detailed information on the nature and extent of all Lustig's business activities, such as where sales are conducted, what products are sold and to whom, where and how the products are marketed, where taxes are filed and paid and whether any agents or employees exist.  Additionally, Lustig does not address his alleged purchase of boards from Riviera or his other transactions with Riviera--the alleged infringement, the settlement agreement, negotiations, litigation, etc.[11]  The Court believes that limited discovery and additional briefing may provide a firmer footing for a decision on personal jurisdiction.  Accordingly, the Court will recommend denial of Prestige's motion to dismiss, but with leave to renew after limited discovery on the personal jurisdiction issue.[12]

WHEREFORE:

(1) The Court recommends that the motion to dismiss and strike by Riviera be granted in part and denied in part (d/e 17).  The Court recommends that High-

---

[11]High-Top also appears to attack Lustig's credibility. High-Top submits affidavits of its own showing that Lustig was operating under the name Prestige Industries, Inc., despite Lustig's averment otherwise  (d/e 34, attached affidavits).

[12]Prestige's argument on personal service depends on the success of its personal jurisdiction argument: that service cannot be had since personal jurisdiction does not exist.  Thus, the court does not address this argument.

Top's Counter-Claim for declaratory relief (Count I) be dismissed.  The Court further recommends that the request for attorney's fees and punitive damages be stricken in Count III of the Counter-Complaint, but with leave to file an amended complaint.  The Court otherwise recommends denial of Riviera's motion to dismiss.

(2) The Court further recommends that the motion to dismiss by Universal be denied (d/e 26).

(3) The Court lastly recommends that the motion to dismiss by Prestige be denied (d/e 28), with leave to renew after limited discovery on the question of personal jurisdiction.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1).  Failure to timely object will constitute a waiver of objections on appeal.  Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See also Local Rule 72.2.


ENTER:    February 5, 2008

                                        *s/ Byron G. Cudmore*
                        _____
                                    BYRON G. CUDMORE
                                    UNITED STATES MAGISTRATE JUDGE